**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DMITRIY V. LITVINOV | : | |
| | : | |
| Appellant | : | No. 1051 MDA 2025 |

Appeal from the PCRA Order Entered July 11, 2025
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0000462-2010

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DMITRIY V. LITVINOV | : | |
| | : | |
| Appellant | : | No. 1052 MDA 2025 |

Appeal from the PCRA Order Entered July 11, 2025
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0000464-2010

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DMITRIY V. LITVINOV | : | |
| | : | |
| Appellant | : | No. 1053 MDA 2025 |

Appeal from the PCRA Order Entered July 11, 2025
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0001090-2010

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |

:
v.                                  :
                                    :
                                    :
DMITRIY V. LITVINOV                  :
                                    :
        Appellant                   :   No. 1054 MDA 2025

Appeal from the PCRA Order Entered July 11, 2025
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0001139-2010

COMMONWEALTH OF PENNSYLVANIA        :   IN THE SUPERIOR COURT OF
                                    :           PENNSYLVANIA
                                    :
v.                                  :
                                    :
                                    :
                                    :
DMITRIY V. LITVINOV                  :
                                    :
        Appellant                   :   No. 1055 MDA 2025

Appeal from the PCRA Order Entered July 11, 2025
In the Court of Common Pleas of Centre County Criminal Division at
No(s):  CP-14-CR-0001157-2010

COMMONWEALTH OF PENNSYLVANIA        :   IN THE SUPERIOR COURT OF
                                    :           PENNSYLVANIA
                                    :
v.                                  :
                                    :
                                    :
                                    :
DIMITRIY V. LITVINOV                 :
                                    :
        Appellant                   :   No. 1056 MDA 2025

Appeal from the PCRA Order Entered July 11, 2025
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0001158-2010

COMMONWEALTH OF PENNSYLVANIA        :   IN THE SUPERIOR COURT OF
                                    :           PENNSYLVANIA
                                    :
v.                                  :
                                    :
                                    :

DMITRIY V. LITVINOV          :
                                 :

          Appellant            :   No. 1057 MDA 2025

Appeal from the PCRA Order Entered July 11, 2025
In the Court of Common Pleas of Centre County Criminal Division at
No(s):  CP-14-CR-0001159-2010

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                 :        PENNSYLVANIA
                                 :

          v.                     :

DMITRIY V. LITVINOV          :

          Appellant            :   No. 1058 MDA 2025

Appeal from the PCRA Order Entered July 11, 2025
In the Court of Common Pleas of Centre County Criminal Division at
No(s):  CP-14-CR-0001161-2010

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                 :        PENNSYLVANIA
                                 :

          v.                     :

DMITRIY V. LITVINOV          :

          Appellant            :   No. 1059 MDA 2025

Appeal from the PCRA Order Entered July 11, 2025
In the Court of Common Pleas of Centre County Criminal Division at
No(s):  CP-14-CR-0001163-2010

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                   :        PENNSYLVANIA
                                 :

          v.                     :

DMITRIY V. LITVINOV          :

          Appellant            :   No. 1060 MDA 2025

Appeal from the PCRA Order Entered July 11, 2025
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0001164-2010

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
DMITRIY V. LITVINOV :
:
Appellant : No. 1061 MDA 2025

Appeal from the PCRA Order Entered July 11, 2025
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0000364-2011

BEFORE: KUNSELMAN, J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED: JULY 14, 2026**

In these consolidated appeals, Dmitriy V. Litvinov appeals *pro se* from the order denying his petition for relief under the Post Conviction Relief Act ("PCRA").[1] We conclude that the PCRA court erroneously found that one of Appellant's two claims of ineffective assistance of counsel ("IAC") had been previously litigated. We disagree with the Commonwealth that the dismissal of that claim may be affirmed on alternative grounds. We affirm the dismissal of the remaining IAC claim. We thus affirm in part, reverse in part, and remand for further proceedings.

**I.**

_____

[1] 42 Pa.C.S. §§ 9541 – 9546. For ease of readability, we refer to the orders and petitions in the singular.

<u>Procedural History</u>

The Commonwealth jointly tried Appellant and his co-defendants[2] for dozens of crimes at the eleven dockets listed in the caption. We previously summarized the basic history as follows:

> Beginning in January of 2010, [Appellant] and his accomplices began a spree of, among other things: burglary, armed robbery, and kidnapping. Through March of the same year, [Appellant] robbed numerous individual persons and establishments [in Centre County, Pennsylvania]. In carrying out several of these crimes, [Appellant] brandished firearms - including a stolen WASR-10 - AK style assault rifle. In several instances, [Appellant] and his accomplices physically assaulted victims and threatened their lives at gunpoint. When [Appellant] and his accomplices were finally apprehended, the Commonwealth charged [Appellant] with numerous crimes, including [r]obbery, [k]idnapping, and [c]riminal [m]ischief.

***Commonwealth v. Litvinov***, 253 A.3d 316, 2021 WL 1627214 (Pa. Super. filed April 27, 2021) (unpublished memorandum).

The procedural history of this case is rather complex, and for ease of discussion we begin with the collateral proceedings underlying the present appeals. The only relief Appellant sought in his amended petition was "collateral relief in the form of an evidentiary hearing based on ineffective assistance of appellate counsel claims and a new trial based on the underlying claims of … ***Brady*** … and ***Napue*** [violations]." *Pro se* PCRA Petition, 8/31/23,

---

[2] The Commonwealth originally tried Appellant, Maksim Illarionov, Alexei Semionov, and Anatoliy Veretnov in February of 2011. During trial, Semionov decided to accept a guilty plea. The trial court granted a mistrial and, following Appellant's unsuccessful attempt to bar retrial, the parties proceeded to a jury trial in June of 2012.

at ¶ 3. The claims[3] raised in the PCRA petition concern witnesses Lindsay Coatman and Joshua Dunlap.[4] As some of those claims were raised on direct appeal, we begin by discussing that history.

On direct examination at Appellant's trial, Lindsay Coatman admitted to Assistant District Attorney Nathan Boob that he "grow[s] marijuana" and "got caught with, I don't know, around 70 plants and some firearms that I wasn't supposed to have." N.T., 6/20/12, at 1155. He informed the jury that he had "pleaded guilty the other year" regarding the drugs and guns but had yet to be sentenced. *Id.* at 1156. ADA Boob asked, "And have any promises been made to you by the district attorney's office or anyone else regarding what's

---

[3] Under **Brady v. Maryland**, 373 U.S. 83, 87 (1963), "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." "[T]he prospect of leniency in return for testimony implicates **Brady**." **Commonwealth v. Johnson**, 353 A.3d 609, 636 (Pa. 2026).

**In Napue v. Illinois**, 360 U.S. 264, 269 (1959), the United States Supreme Court held that a "conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment," and the "same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." **Id.** at 269.

[4] The Commonwealth stated that Coatman has died. **See** Commonwealth's Answer to counseled PCRA, 2/7/23, at 6 ("Lindsay Coatman is not available as a witness on this issue as he passed away in 2016."). Dunlap has apparently passed away as well. **See** Supplement No. 2 to PCRA petition, 9/24/24 (Exhibit 60) (affidavit of Wayne E. Bradburn, Jr., Esq. ("I also learned that Josh Dunlop [sic] has passed away, but I am unaware as to when he died and was unable to find an on-line obituary.").

going to happen with your charges?" *Id.* Coatman stated, "No, none at all, none at all." *Id.*

On cross-examination, trial counsel elicited that Coatman had entered a plea for the drug and gun offenses in November of 2009, and Coatman replied that "[he] was going to jail." N.T., 6/21/12, at 1316. Trial counsel approached Coatman with a copy of Coatman's written guilty plea colloquy, which stated that Coatman's plea was for a term of two and one-half to five years of incarceration. *Id.* at 1317-18 ("Q. Does this say that the terms of your sentence are two and a half to five years on count [one] … followed by five years [of] consecutive probation on count [three]?" A. Yep, that's what it says."). Notwithstanding this apparent agreement, Coatman was sentenced on October 29, 2012 at docket CP-14-CR-974-2009, *i.e.* after Appellant's original sentencing date and after his time for post-sentence motions had expired, to an aggregate period of three years' probation.[5]

Joshua Dunlap testified that he and Appellant were both on the "same block ... at the Centre County prison." N.T., 6/18/12, at 396. Dunlap then testified that Appellant admitted to participating in several of the charged robberies. On cross-examination, trial counsel elicited that Dunlap had

_____

[5] The docket reflects that Coatman had entered a plea on November 19, 2009, to one count of possession with intent to deliver (35 P.S. § 780-113(a)(30)), graded as an ungraded felony, and one count of unlawful possession of a firearm (18 Pa.C.S. § 6105(a)(1)), graded as a felony of the second degree. Coatman received identical and concurrent sentences of three years of probation at each count.

several pending criminal cases in Centre County, and that at least one of them had been continued until after Appellant's trial. Appellant asked if the continuance was for "testify[ing] against my client" and to "get a better deal[.]" *Id.* at 404. Dunlap denied the accusation and stated that his lawyer had advised postponing the case. *Id.* at 405. Dunlap had likewise denied on direct examination that he received any promises in exchange for his testimony. *Id.* at 395.

As previously stated, Appellant was convicted of multiple crimes. On September 21, 2012, the trial court imposed an aggregate sentence of 39 years and eight months to 79 years and four months of incarceration. Appellant's court-appointed counsel filed post-sentence motions on October 1, 2012, which did not include any claims regarding witnesses Dunlap or Coatman. Thereafter, Appellant retained Alexander Z. Talmadge, Jr., Esq., who filed a notice of appeal on October 18, 2012 before the trial court ruled on the post-sentence motions. On December 11, 2012, we dismissed the appeal due to his attorney's failure to comply with Pa.R.A.P. 3517. *See* Order, 12/11/12, docketed at 1842 MDA 2012.

Meanwhile, the Commonwealth also filed post-sentence motions, arguing that the trial court erred in refusing to apply a mandatory sentence. The trial court held a hearing and denied the motion on January 4, 2013. The Commonwealth appealed and we subsequently remanded for the imposition of certain then-lawful mandatory minimum sentences. *See Commonwealth v. Litvinov*, 193 MDA 2013, 2013 WL 11256353 (Pa. Super. filed Aug. 27,

2013). Appellant was resentenced on October 17, 2013. He did not file any post-sentence motions or notice of appeal.

On December 10, 2015, Appellant filed an untimely *pro se* petition for relief under the PCRA, seeking reinstatement of his appellate rights due to his attorney's failure to perfect his original, premature appeal in 2012. The PCRA court appointed Marc A. Decker, Esq., and Wayne E. Bradburn, Jr., Esq. (hereinafter collectively referred to as "Direct Appeal Attorneys"), to represent Appellant. Direct Appeal Attorneys thereafter filed an amended petition, alleging that Attorney Talmadge had made a series of errors, misled Appellant as to the status of his appeal, and that Appellant acted with due diligence in uncovering those facts. The PCRA court held a hearing and granted reinstatement of his direct appeal rights. The Commonwealth appealed and we affirmed. *See Commonwealth v. Litvinov*, 1771 MDA 2017, 2019 WL 210414 (Pa. Super. filed Jan. 16, 2019).

Appellant then filed a timely notice of appeal from his October 17, 2013 judgment of sentence imposed following resentencing. We affirmed Appellant's convictions but vacated Appellant's judgment of sentence due to the invalidation of several of his mandatory minimum sentences. *Commonwealth v. Litvinov*, No. 1851 MDA 2017, 2019 WL 210453, at *2 (Pa. Super. filed Jan. 16, 2019) (unpublished memorandum).[6]

---

[6] For ease of readability, all subsequent references to *Litvinov* refer to this decision.

Notably, Appellant requested a remand to pursue a **Brady** and/or **Napue** violation, raising the following claim:

> II. Whether the Commonwealth appears to have engaged in prosecutorial misconduct, suborned perjury, committed a **Brady** violation and/or otherwise failed to correct erroneous and misleading testimony of their star witness, confidential informant Lindsay Coatman, such that, at a minimum, Appellant's case should be remanded to the trial court for an evidentiary hearing to develop a record on this colorable issue?

**Id.** at *1.

Addressing this claim, we first noted that, at the time of his testimony, "Coatman had pled guilty to unrelated drug and firearms charges, but had yet to be sentenced. He testified that he expected jail time but he eventually received only probation." **Id.** at *2. We rejected Appellant's request for a remand due to a lack of evidentiary support.

> ...Appellant infers: 1) that Coatman lied on the stand; 2) that the prosecutor failed to correct Coatman's testimony despite knowing of its falsehood; 3) that Coatman received a promise of leniency from the prosecution in exchange for his testimony in this case; and 4) that the prosecution failed to disclose the existence of its deal with Coatman.
>
> The record provides no support for any of Appellant's inferences. Indeed, Appellant was aware of the plea offer Coatman signed, in which the Commonwealth recommended two and one-half to five years of incarceration followed by five years of probation.

**Id.** at *2.[7]

_____

[7] We note that **Brady** and/or **Napue** claims are subject to waiver. **See generally Commonwealth v. Baynard**, 355 A.3d 21, 28 (Pa. Super. 2026). Direct Appeal Attorneys' brief filed in the **Litvinov** decision recognized this
*(Footnote Continued Next Page)*

We held that the lack of a record made Appellant's case analogous to

***Commonwealth v. Barksdale***, 275 A.2d 291, 292 (Pa. 1971), wherein

Barksdale killed an individual during an armed robbery.  Loretta Johnson, the

getaway driver, testified against Barksdale.  ***Id.*** at 291.  On cross-

examination, Johnson denied that she had been promised anything in

exchange for her testimony.  ***Id.*** at 292.  Following Barksdale's trial, Johnson

"pleaded guilty to second-degree murder and was sentenced to less than the

maximum allowable sentence."  ***Id.***  Barksdale argued that under ***Napue*** the

fact of the lenient sentence warranted a remand for a hearing.  Our Supreme

Court disagreed, explaining:

> The fact that Miss Johnson received a more lenient sentence than
> the appellant or Smith in no way proves she was promised
> anything for her testimony.  For one thing, as the driver of the
> getaway car, she played a lesser role in the crime, a fact which
> might indicate she was less dangerous and which could properly
> lead to a more merciful punishment despite her complicity in the
> felony-murder.  In addition, it is far from unusual for a felon who
> testifies against a co-defendant to receive less severe treatment
> from the district attorney and the court even though no specific
> promises are made.

***Id.*** at 292 (citation omitted).

---

point, stating: "Undersigned [c]ounsel is cognizant that a record on this issue
had not been developed at the [t]rial [c]ourt level due to the unconventional
procedural history of this case and the ineffective assistance of Appellant's
prior counsel; however the instant direct appeal is the first opportunity that
Appellant has had to raise this claim."  Appellant's Brief, 1851 MDA 2017, at
59.

The **Litvinov** panel, relying on this rationale, concluded that Appellant's arguments amounted to mere speculation that the Commonwealth and Coatman had a deal.

> There, as here, the appellant insinuated that a Commonwealth witness lied on the stand and that the prosecution made promises in exchange for the testimony. There, as here, the witness denied receiving any such promise, and the appellant produced no evidence to contradict that testimony, other than the sentence the witness received. There, as here, the appellant cross-examined the witness on her motives for cooperating with the Commonwealth. Finally, the Supreme Court opined that a lesser sentence for a cooperating witness is not unusual, regardless of any specific promises from a prosecutor. Given all of the foregoing, we conclude that no relief is due.

**Litvinov**, 2019 WL 210453, at *4.

Returning to the amended PCRA petition in the present case, Appellant recognized that this Court "denied the request for an evidentiary hearing due to lack of supporting evidence." Amended *pro se* PCRA petition, 8/31/23, ¶ 33. He faulted appellate counsel for failing to (1) present additional argument for this Court's consideration on the Coatman claims and (2) include additional facts for this Court's consideration. **Id.** ¶ 36. As to the additional facts, Appellant attached as an exhibit a copy of Coatman's sentencing transcript. **Id.** (Exhibit 23). In the transcript, Coatman's counsel, R. Bruce Manchester, Esq., told the trial court at sidebar that Coatman "cooperated fully" in the case against Appellant and his co-defendants and that "as a result of that the District Attorney's Office amended their recommended sentence[.]" N.T.

Coatman Sentencing, 10/29/12, at 2.[8]   ADA Boob explained the
Commonwealth's reasons for the modified sentence:

> I just want to put this on the record now and not in front of
> everybody in the courtroom, but Mr. Coatman did provide
> substantial cooperation.  We are offering a mitigated sentence in
> this case for him because of that cooperation.  In fact, without him
> -- he was essential in convicting three Russian individuals that
> terrorized the community.  Without him we would not have an --
> we wouldn't have been able to stop their melee and mayhem
> before we were.   He put himself at great risk and peril by
> cooperating with us and doing consensual interceptions for the
> Commonwealth.
>
> . . . .
>
> He has been in peril since this occurred and probably will still be
> in peril as this continues.  Therefore, we feel the plea agreement
> is appropriate and we ask the court to follow it.

*Id.* at 2-3.  The Coatman sentencing court "accept[ed] that," *id.* at 3, and
imposed the sentence of three years of probation, as opposed to the 2½ to 5
cited on cross-examination at Appellant's trial.

The PCRA court issued a Rule 907 notice of intent to dismiss without a
hearing.  Appellant objected to the dismissal, and the PCRA court denied the
petition on July 11, 2025.  Appellant timely filed notices of appeal and
complied with Rule 1925.  We have consolidated the appeals *sua sponte*
pursuant to Pa.R.A.P. 513 for disposition.  Appellant raises the following issues
on appeal, which we quote verbatim.

---

[8] This transcript is attached as an exhibit to Appellant's *pro se* petition.

I. Whether the PCRA Court erred in concluding that two sub-claims of Appellate Counsel's ineffectiveness were previo[u]sly litigated of direct appeal?

II. Whether the PCRA Court erred in dismissing the amended PCRA petition that was based on the claim of the Commonwealth committing multiple violations of the Fourteenth Amendment's Due Process Clause as held by *Brady v. Maryland*, 373 U.S. 83 (1963), and *Napue v. Illinois*, 360 U.S. 264 (1955), which violations were ineffectively pursued during Appellant's direct appeal to the Superior Court of Pennsylvania by Appellate Counsel:

A. Whether the PCRA Court erred in concluding that there is no merit to the sub-claim of Appellate Counsel's failure to present the available evidence, within the pursued request for remand for an evidentiary hearing, showing that the Commonwealth violated *Brady v. Maryland* by suppressing an understanding that it had with its essential witness, Lindsay Coatman, where the Commonwealth would treat Lindsay Coatman's criminal matter(s) favorably in exchange for his assistance with Appellant's case?

B. Whether the PCRA Cout erred in concluding that there is no merit to the sub-claim of Appellate Counsel's failure to present the available evidence, within the pursed request for remand for an evidentiary hearing, showing that the Commonwealth violated *Napue v. Illinois* by knowingly introducing false testimony at Appellant's re-trial by its essential witness, Lindsay Coatman, regarding an understanding where the Commonwealth would treat his criminal matter(s) favorably in exchange for his assistance with Appellant 's case?

C. Whether the PCRA Court erred in concluding that there is no merit to the sub-claim of Appellate Counsel's failure to request a remand for an evidentiary hearing when Appellate Counsel had learned, during Appellant's pending direct appeal, of evidence showing that the Commonwealth violated *Brady v. Maryland* by suppressing an understanding that it had with its jailhouse informant, Joshua Dunlap, where the Commonwealth would treat his criminal matter(s) favorably in exchange for his assistance with Appellant's case?

D. Whether the PCRA Court erred in concluding that there is no merit to the sub-claim of Appellant Counsel's failure to request a remand for an evidentiary hearing when Appellate Counsel had learned, during Appellant's pending direct appeal, of evidence showing that the Commonwealth violated *Napue v. Illinois* by knowingly introducing false testimony at Appellant's re-trial by its jailhouse informant, Joshua Dunlap, regarding an understanding where the Commonwealth would treat his criminal matter (s) favorably in exchange for his assistance with Appellant's case?

E. Whether the PCRA Court erred in dismissing the claim without holding an evidentiary hearing given the fact that the Commonwealth disputed the existence of understandings with its witnesses, Lindsay Coatman and Joshua Dunlap?

III. Whether the PCRA Court erred in denying PCRA discovery?

Appellant's Brief at 4-5.

Our standard of review requires this Court to determine whether the ruling of the PCRA court is supported by the record and free of legal error. *See Commonwealth v. Wharton*, 263 A.3d 561, 567 (Pa. 2021). "[A]s long as a PCRA court's ruling is free of legal error and is supported by record evidence, we will not disturb its ruling. Nonetheless, where the issue pertains to a question of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Pander*, 100 A.3d 626, 630 (Pa. Super. 2014) (*en banc*) (quotation marks and citations omitted).

Appellant presents three issues for review on this appeal. The first issue, regarding whether the court erred in finding that his claims were previously litigated, is subsumed within the second regarding counsel's ineffectiveness, as Appellant argues the PCRA court erred by concluding his

IAC claims were previously litigated. We therefore address that issue within our discussion of the second.

## II.

## IAC

In his second issue, which asserts the ineffective assistance of Direct Appeal Attorneys, Appellant raises five separate ineffectiveness theories. The first two subissues concern Lindsay Coatman; the following two pertain to witness Joshua Dunlap. The fifth subissue argues that the PCRA court erred in failing to hold an evidentiary hearing on these IAC claims.

We begin by setting forth the applicable ineffective assistance of counsel test, which is well-established.

> It is well-settled that counsel is presumed to have been effective and that the petitioner bears the burden of proving counsel's alleged ineffectiveness. ***Commonwealth v. Cooper***, . . . 941 A.2d 655, 664 ([Pa.] 2007). To overcome this presumption, a petitioner must establish that: (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, "that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different." ***Id.*** A PCRA petitioner must address each of these prongs on appeal. ***See Commonwealth v. Natividad***, . . . 938 A.2d 310, 322 ([Pa.] 2007) (explaining that "appellants continue to bear the burden of pleading and proving each of the ***Pierce*** elements on appeal to this Court"). A petitioner's failure to satisfy any prong of this test is fatal to the claim. ***Cooper***, 941 A.2d at 664.

***Commonwealth v. Wholaver***, 177 A.3d 136, 144 (Pa. 2018).

Both of Appellant's direct appeal counsel ineffectiveness claims are "stand-alone" claims, *i.e.*, Appellant directly challenges the effectiveness of

appellate counsel rather than arguing a "layered" claim of ineffectiveness. In

**Commonwealth v. Paddy**, then-Chief Justice Castille explained the

application of the IAC test in these circumstances.

> With a stand-alone claim, the entire focus is upon the performance of appellate counsel . . . . To prevail, the PCRA petitioner must show exactly how appellate counsel was ineffective, by offering additional evidence or controlling authority, missed by direct appeal counsel, that would have changed the appeal outcome; or by specifically alleging the winning claim or distinct legal theory that appellate counsel failed to recognize; and then by showing how the appeal, as pursued, was incompetent by comparison.

**Commonwealth v. Paddy**, 15 A.3d 431, 476 (Pa. 2011) (Castille, C.J.,

concurring). **See also Commonwealth v. Koehler,** 36 A.3d 121, 142 (Pa.

2012) ("To succeed on such a claim, a PCRA petitioner must demonstrate that

appellate counsel was ineffective in the manner by which he litigated the claim

on appeal.") (citing **Paddy** concurrence).

### Lindsay Coatman

Appellant alleges that appellate counsel (1) ineffectively failed to argue

certain points on appeal, and (2) ineffectively failed to submit all available

evidence. Appellant's subissues correspond to separate claims under **Brady**

and **Napue**. There is no need to distinguish the two legal theories as

Appellant's core theory is the same for both: the Commonwealth had an

undisclosed arrangement to grant Coatman leniency in exchange for his testimony.[9]  We therefore jointly address these subissues.

Appellant argues that the *Litvinov* panel would have remanded for an evidentiary hearing but for "evidence ... omitted" by Direct Appeal Attorneys. Appellant's Brief at 14.  For instance, Appellant cites ADA Boob's comments at Coatman's sentencing, arguing that "[t]he proffered evidence, viewed in its entirety, circumstantially establish[es] that the Commonwealth suppressed an understanding that it had with Coatman."  *Id.* at 17.  Among other points, Appellant argues that, absent extraordinary circumstances, Coatman should have been sentenced to the 2½ to 5 term within 90 days of his plea in 2009. *Id.* at 32.[10]  "Thus, the procedural principles logically suggest that ADA Boob and Attorney Manchester agreed to abey Coatman's sentencing and provided the reason — Coatman's complete cooperation on Mr. Litvinov's case will result in a benefit at the time of his sentencing."  *Id.* at 33.  Appellant characterizes the argument presented by Direct Appeal Counsel in support of remand as

---

[9]  A *Napue* claim is a particular type of *Brady* violation.  The difference between the two theories largely comes down to who bears the burden of showing prejudice.  "[I]f the defendant establishes that the prosecutor knowingly allowed false testimony to stand uncorrected, the burden rests with the Commonwealth to establish lack of prejudice."  *Commonwealth v. Johnson*, 353 A.3d 609, 642 (Pa. 2026).  For a *Brady* violation, the defendant bears the burden.  *Id.* at 631.  We also note that Appellant has brought this claim on collateral review.

[10]  *See* Pa.R.Crim.P. 704(A)(1) (establishing general rule that "sentence in a court case shall ordinarily be imposed within 90 days of conviction or the entry of a plea of guilty or *nolo contendere*).

"limited" and faults his attorneys for, *inter alia*, not emphasizing the several postponements that had occurred in Coatman's case and the disparity between Coatman's ultimate sentence and the plea agreement.

In rejecting this claim, the PCRA court did not address the IAC test. Instead, the PCRA court concluded that Appellant was ineligible for relief because he must show "[t]hat the allegation of error has not been previously litigated or waived." 42 Pa.C.S. § 9543(a)(3). The PCRA court concluded that this claim "ha[s] been previously litigated such that [Appellant] is not entitled to relief on these grounds." PCRA Court Opinion (PCO), 5/19/25, at 8.[11] The PCRA court first summarized the factual basis for Appellant's argument as follows:

- Prior to November 19, 2009, Coatman had executed a written guilty plea colloquy in exchange for ADA Boob's recommended sentence of 2½ to 5 years incarceration followed by 5 years of probation;

- On January 28, 2011, DA Parks-Miller had informed Petitioner that Coatman's assistance with Petitioner's case was not in exchange for a benefit;

- At Petitioner's re-trial [in June 2012], ADA Boob had started the direct examination of Coatman by eliciting the testimony that the Commonwealth did not promise Coatman anything for his testimony;

- On October 2012, Coatman's sentencing hearing was held. At the hearing, ADA Boob had amended Coatman's original sentence--2½ to 5

---

[11] In its Rule 1925(a) opinion, the PCRA court directed this Court to the opinion accompanying the notice of intent to dismiss. *See* Opinion, 10/21/25 (single page). For ease of reference, we refer to the notice of intent to dismiss opinion as the PCRA court opinion.

years of incarceration followed by 5 years of probation, to a more lenient sentence—3 years of probation. The amendment was done because Coatman was essential in convicting Petitioner. Coatman was sentenced to the new sentence.

PCO at 9-10 (bulleting and bracketing in original; citations and quotation marks omitted).

The PCRA court opined that "the Superior Court determined that [Appellant's] argument on this exact issue was 'purely speculative,'" and therefore the claim "has been previously litigated and denied by the Superior Court." *Id.* at 10.

We disagree, as a claim of ineffective assistance of counsel is analytically distinct from a merits analysis of the underlying issue. Appellant cites *Commonwealth v. Collins*, 888 A.2d 564 (Pa. 2005), to support his claim that the PCRA court erred. *See* Appellant's Brief at 22. We agree that *Collins* establishes that the PCRA court erred as a matter of law. In *Collins*, our Supreme Court explained that its prior decisions "analogized a claim of counsel ineffectiveness to an 'alternative theory' or allegation in support of the same issue," and as a result those cases applied the PCRA's "previous litigation" bar to such claims. This was essentially the PCRA court's analysis, as it viewed the "issue" as whether the Commonwealth violated *Brady* and *Napue*, and concluded that our discussion of *Barksdale* foreclosed Appellant's current claims.

However, *Collins* held that a Sixth Amendment claim of ineffective assistance is a distinct claim. That said, because ineffective assistance of

- 20 -

counsel requires proof of both arguable merit and prejudice, the rationale applied in rejecting the underlying claim—here, whether there was a sufficient basis to warrant a remand to hold a hearing on potential **Napue** and/or **Brady** violations—may preclude relief. The IAC claim is, however, a separate issue and must be analyzed as such. **See Commonwealth v. Carson**, 913 A.2d 220, 234 (Pa. 2006) ("[W]hile an ineffectiveness claim may fail for the same reasons that the underlying claim faltered on direct review, the Sixth Amendment basis for ineffectiveness claims technically creates a separate issue for review under the PCRA."). We therefore agree with Appellant that the PCRA court erred by concluding the claim was previously litigated.

We now address whether the **Litvinov** panel's analysis and application of **Barksdale** warrants affirming the PCRA court's order on the alternative ground that Appellant cannot show arguable merit and/or prejudice as to the Coatman claims. The Commonwealth submits that we may do so. Commonwealth's Brief at 17 ("Assuming *arguendo* the claim relating to Lindsay Coatman's testimony was not 'previously litigated' for PCRA purposes, the claim - now framed as ineffective assistance of counsel - still fails on the merits based on the same analysis conducted by the Superior Court during the 2017 direct appeal."). The Commonwealth argues:

> [T]he Superior Court appropriately concluded that Appellant's claim that a deal was in place when Mr. Coatman testified is "purely speculative" and that he later received a plea offer which Appellant deems favorable does nothing to bolster his claim. As the factual record before this Court now is the same as before the panel in 2017, there is no reason to change the outcome, and once again "no relief is due."

*Id.* at 18.

We disagree. To be sure, large portions of Appellant's brief can be read to advance the proposition that the mere fact that Coatman received a favorable outcome is itself proof that there must have been a deal in place. Nonetheless, this is not sufficient proof of a ***Brady*** or ***Napue*** claim. ***See Commonwealth v. Simpson***, 66 A.3d 253, 266 (Pa. 2013) ("As [Simpson] has ... simply suggested that under the circumstances a deal between Hall and the Commonwealth 'must have been made,' without proffering any evidence, the PCRA court correctly dismissed this claim without a hearing."); ***Commonwealth v. Champney***, 832 A.2d 403, 412 (Pa. 2003) ("[Champney's] mere assumption that something such as a promise to assist in reducing [a witness's] federal sentence must have been made is not sufficient to establish that such an agreement in fact existed.").

However, the Commonwealth's argument overlooks Appellant's fundamental claim that appellate counsel failed to present all available evidence in support of the request for remand. We are particularly persuaded by Appellant's citation to ADA Boob's comments at Coatman's sentencing. Analyzing this claim under the three prongs of the IAC test, we conclude that the PCRA court erred in dismissing this claim without an evidentiary hearing.

First, a "claim has arguable merit where the factual averments, if accurate, could establish cause for relief." ***Commonwealth v. Sandusky***, 203 A.3d 1033, 1043 (Pa. Super. 2019) (quoting ***Commonwealth v. Stewart***, 84 A.3d 701, 707 (Pa. Super. 2013)). The relevant factual

averment here is Appellant's claim that Direct Appeal Attorneys knew of the Coatman sentencing transcript wherein ADA Boob "amended" the previous plea agreement, yet failed to offer that fact for our consideration on appeal. We conclude that this factual allegation, if true, could establish relief.

The arguable merit of this claim in terms of its legal effect is evident from the *Litvinov* panel's conclusion that "[t]he record also contains no indication that Coatman's probationary sentence was anything other than an exercise of that sentencing court's discretion." *Litvinov*, 2019 WL 210453 at *3. The sentencing transcript refutes that conclusion; the Commonwealth cited Coatman's "substantial cooperation" and "offer[ed] a mitigated sentence ... because of that cooperation." N.T. Coatman Sentencing, 10/29/12, at 2. The trial court agreed with this argument. *Id.* at 3 ("THE COURT: The court will accept that and sentence accordingly.") We therefore disagree with the Commonwealth that the "factual record" before this Court and the *Litvinov* panel is the same. Had Direct Appeal Attorneys included the Coatman sentencing transcript, this Court could not rightly have concluded that there is "no indication" that Coatman's sentence was solely the product of the sentencing court's discretionary authority.

Second, Appellant must show that appellate counsel lacked a strategic basis for failing to include this evidence. This requires the taking of testimony and the court rendering credibility determinations. On this point, we note that Appellant does not claim that a competent attorney would have uncovered the sentencing transcript. While that would presumably be the case, it remains

- 23 -

Appellant's burden to prove his specific ineffectiveness claims. Here, Appellant has made the claim that Direct Appeal Attorneys were provided all relevant evidence during his communications with them during the initial PCRA proceedings that led to reinstatement of his appellate rights. ***See, e.g.*** Appellant's Brief at 45 ("Even though the above addressed evidence was known to [Direct Appeal Attorneys] prior to submitting Coatman remand claim it was never presented in support of the claim."). Appellant also cited exhibits 25, 26, and 27 of his amended PCRA petition, which are copies of letters sent by Appellant to Direct Appeal Attorneys in which he broadly discusses the evidence and his desire to pursue a claim regarding Coatman. While not artfully pled, Appellant appears to allege that his attorneys knew about the sentencing transcript yet failed to include it. ***See Commonwealth v. Rivera***, 685 A.2d 1011, 1013 (Pa. Super. 1996) (acknowledging that while *pro se* litigants are "not entitled to any particular advantage" we are "willing to liberally construe materials filed by a *pro se* litigant"). Thus, the PCRA court erred by failing to hold an evidentiary hearing to address (1) whether and when appellate counsel obtained this information from Appellant and, if so, (2) whether counsel made a reasonable strategic decision for declining to include that material.[12]

---

[12] We find it difficult to conceive of a scenario where counsel could decide to raise the remand issue yet decline to include an important piece of evidence in conjunction with that request. Nonetheless, it remains Appellant's burden to prove this prong.

*(Footnote Continued Next Page)*

Third, we conclude that, if he can prove no reasonable basis existed for counsel's acts, Appellant has established prejudice. Simultaneously, we stress that we **do not** conclude that Appellant has shown prejudice in the sense that the transcript establishes an actual ***Brady*** or ***Napue*** violation. Rather, we conclude that Appellant has established as a matter of law that there is a reasonable probability that this Court would have granted the remand for an evidentiary hearing on that point.

The most significant purpose to be served by a remand would be to clear up the status of Coatman's criminal cases as of the date of Appellant's jury trial. On direct examination, ADA Boob asked Coatman about his guilty plea to the charges involving marijuana and firearms.

Q. In fact, you had pled guilty to those charges?

A. Yes, sir. I pleaded guilty the other year.

Q. Do you know what penalty you're facing for that?

---

Additionally, Appellant's brief notes that he was able to obtain an affidavit from Attorney Bradburn, but not Attorney Decker. Attorney Bradburn's affidavit explains that Attorney Decker largely handled Appellant's appeal following reinstatement of his appellate rights, and it was his "recollection that when Attorney Decker was preparing the first direct appeal, he did not believe" that a remand "would secure the relief that [Appellant] was seeking in part because at least one of these witnesses [apparently referring to Coatman] was now deceased." **See** Supplement No. 2 to PCRA petition, 9/24/24 (Exhibit 60).

Appellant argues that this is an unreasonable legal conclusion. On that point, we agree. However, Attorney Bradburn's affidavit states that Attorney Decker handled this issue, and the fact that the issue was raised indicates Attorney Decker did not conclude that relief was foreclosed based on Coatman's death.

- 25 -

A. Three to five or -- a long time.

Q. Have you not been sentenced yet on those charges?

A. Yes, sir, I pleaded guilty, yes.

Q. Okay, but did you get sentenced yet or not?

A. (no response)

Q. Did you go to jail for that charge yet?

A. No, sir.

Q. Okay. And have any promises been made to you by the district attorney's office or anyone else regarding what's going to happen with your charges?

A. No, none at all, none at all.

N.T., 6/20/12, at 1156.

Appellant's trial attorney impeached Coatman on this point and showed Coatman a copy of his written guilty plea colloquy, which states under the heading "Plea Agreement": "In exchange for your plea(s) of guilty . . . the Commonwealth has agreed to the following: 2½ to 5 years[,] 5 years probation." *See* Amended *pro se* PCRA petition, 8/31/23 (Exhibit 13). Indeed, Coatman's testimony at Appellant's trial was that "they told me I was going to jail." N.T, 6/21/12, at 1316. He told the jury he did not know why his sentencing proceeding kept being postponed. *Id.* ("Q. And you have no idea when you are getting sentenced, right? A. No. My lawyer keeps on filing continuances.").

Despite the guilty plea colloquy showing that the Commonwealth "agreed" to a specific sentence of 2½ to 5 years of incarceration followed by probation, the *Litvinov* panel characterized that sentence as a

"recommendation," and both Appellant and the PCRA court adopt that terminology. *See* Amended *pro se* PCRA petition, 8/31/23, ¶ 59 ("Coatman had executed a written guilty plea colloquy in exchange for ADA Boob's recommended sentence of 2½ to 5 years of incarceration followed by 5 years of probation"); PCO at 10 ("The record contains no evidence of any agreement whereby Coatman would not receive jail time.") (quoting ***Litvinov***). The proper characterization of the term may prove significant to Appellant's ultimate attempt to establish a ***Brady*** or ***Napue*** violation.

"Assuming the plea agreement is legally possible to fulfill, when the parties enter the plea agreement on the record, and the court accepts and approves the plea, then the parties and the court must abide by the terms of the agreement." ***Commonwealth v. Parsons***, 969 A.2d 1259, 1268 (Pa. Super. 2009) (citation omitted). Therefore, as a matter of law, if Coatman and the Commonwealth had agreed to a specific sentence calling for jail time, and the trial court accepted that agreement, the trial court was obligated to impose the agreed-upon term at sentencing. The written guilty plea colloquy seemingly establishes that agreement and the docket for Coatman's case indicates that the plea agreement was accepted on November 19, 2009. Accordingly, ADA Boob's question to Coatman, "And have any promises been made to you by the district attorney's office or anyone else regarding what's going to happen with your charges?" is somewhat ambiguous in that the plea agreement had, in fact, committed the Commonwealth to a specific sentence in exchange for his plea. The subsequent "modification" of that sentence was

permitted, *see Commonwealth v. Coles*, 530 A.2d 453, 455 (Pa. Super. 1987) (stating that consent of the Commonwealth is required for trial court to "countermand" plea agreement), but the crucial point is that the trial court needed the Commonwealth's consent to modify the agreement. As Appellant points out, a defendant is normally sentenced within 90 days of accepting the plea agreement. That Coatman's sentencing was delayed for years and then resolved almost immediately after Appellant's trial does, in our view, establish a basis for remand. This is not a case where there is no evidence whatsoever of a potential *Brady* and/or *Napue* violation.

We thus conclude that the circumstances of Coatman's sentencing and ultimate sentence warrant an evidentiary hearing. Coatman entered his guilty plea in 2009, and the parties apparently agreed to a sentence of 2½ to 5 years of incarceration followed by probation. The matter was continually postponed until shortly after Appellant's sentencing. Then, at that sentencing, ADA Boob modified Coatman's agreed-upon sentence. We cannot make factual findings and do not and cannot suggest that a due process violation occurred as that is not this Court's prerogative. Our decision today is limited to our conviction that this Court would have remanded for further proceedings if the Coatman transcript had been included on direct appeal.

Relatedly, to the extent that the *Litvinov* panel's decision that there was no plea agreement is the law of the case, we find that an exception applies.

> The law of the case doctrine does not require prophylactic application, however. A prior decision may be departed from in "exceptional circumstances such as where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed."

*Commonwealth v. Santiago*, 822 A.2d 716, 724 (Pa. Super. 2003) (quoting *Commonwealth v. Starr*, 664 A.2d 1326, 1332 (Pa. 1995)). The prior holding that there was merely a "recommendation" cannot be reconciled with the guilty plea colloquy's language showing the Commonwealth "has agreed" to a specific sentence and ADA Boob's comments at Coatman's sentencing, which likewise establishes an "amendment" to a previously-negotiated term.[13] Assuming that Appellant meets the second prong, justice requires an evidentiary hearing.

<u>Joshua Dunlap</u>

This claim differs from the Coatman claim because Direct Appeal Attorneys did not seek a remand to pursue a *Brady* and/or *Napue* claim with respect to Dunlap. We conclude that Appellant has failed to show arguable merit with respect to this claim.

First, we detail the relevant factual averments. Appellant's *pro se* petition stated that, shortly after Dunlap's testimony and Appellant's conviction, Dunlap "appeared in court to plea[d] guilty and receive a

---

[13] The guilty plea colloquy proceeding has apparently not been transcribed. Thus, we do not know what, if anything, was discussed in open court with respect to Coatman's sentence.

sentence." Amended *pro se* PCRA petition, 8/31/23, ¶ 89 (citing Exhibit 30). The attached guilty plea transcript, dated July 12, 2012, resolved four open criminal cases and begins with the following argument from Dunlap's counsel:

> Your Honor, we're here in four separate cases[.] It's probably easiest to break down each case and what the plea offer is for each case. I would like to inform you right now I am going to ask the Court to sentence today, to waive a pre-sentence investigation for a number of reasons. One of which is this case – these cases have been something that the District Attorney's Office and myself have been discussing and trying to resolve for seven, eight months now. Mr. Dunlap has been incarcerated sitting on these things without a plea agreement because specifically he was I'm not sure if [the] key witness but a critical witness in both the Randall Brooks and the Russian trial. He testified on behalf of the Commonwealth knowing there was not a specific plea offer involved and because of their cases getting continued a number of times, [and] the Commonwealth was unable to make a plea offer until he testified. Mr. Dunlap has sat in jail for a number of months waiting until he could testify.

N.T., 7/12/12, at 2. Appellant alleges that the fact Dunlap cooperated in his case and in proceedings against Randall Brooks established that a deal was in place. Appellant's Brief at 35 ("The [PCRA] court ignored the transcript of guilty plea and sentencing hearing in Dunlap's criminal cases which clearly shows that the Commonwealth and Dunlap had an understanding prior to his testimony at Appellant's June 2012 re-trial.").

We conclude that Appellant has failed to show this claim has arguable merit. Like many of his arguments in connection with the Coatman claim, Appellant's argument hinges on the premise that a favorable plea bargain is itself proof that the Commonwealth must have made a deal. The following

argument from Appellant's amended *pro se* petition is illustrative, which we quote *verbatim*:

> The common goal of opposing parties to dispose all four cases after Dunlap's testimony along with provided reason within the March 22, 2012, motion[14] and the entire management history of the cases show that ADA Boob has swept all of Dunlap's cases under the rug of the secret understanding and was prompting a delay by requiring Dunlap to testify before making "a specific plea offer".
>
> Dunlap's cases had to be postponed once more so the disposition of his cases takes place after his testimony at Petitioner's June 2012 re-trial. Thus on May 22, 2012, Attorney McClain's motion to postpone all four cases to August 6, 2012, term was granted. ADA Boob did not oppose.

Amended *pro se* PCRA petition, 8/31/23, at 42-43.

Appellant thus presumes that the only possible reason for postponing Dunlap's cases was to ensure Appellant complied with his end of what Appellant assumes is an undisclosed plea bargain. On that point, we find persuasive Justice Castille's concurring opinion in **Commonwealth v. Strong**:

> ...District Attorney Gillespie, as a matter of policy, sought to avoid plea agreements with cooperating co-defendants until after the cooperation had occurred and could be assessed for truthfulness. There is nothing wrong with such a policy which, as Gillespie testified, he deemed a practical necessity since, "you always have the possibility of getting burned into a plea agreement and then having the defendant not cooperate[.]" An additional legitimate concern weighing in favor of not committing to plea agreements before cooperation was the recognition that such agreements were relevant to bias/credibility and thus could be used to undermine the witness's testimony.

---

[14] Appellant is referencing a postponement of the case, to which the Commonwealth consented.

*Commonwealth v. Strong*, 761 A.2d 1167, 1178–79 (Pa. 2000) (citations to transcript omitted) (Castille, J., concurring).

Of course, there is no testimony from ADA Boob regarding any similar policy in this case. We make this point only to demonstrate that, contrary to Appellant's suppositions, there are valid reasons for the Commonwealth to have consented to the postponement of Dunlap's cases. In fact, Dunlap's attorney informed the trial court that the "Commonwealth was unable to make a plea offer until [Dunlap] testified," which tends to rebut Appellant's claims that a deal was already in place. Furthermore, there is no allegation or evidence showing that the Commonwealth informed Dunlap or his attorney that Dunlap's cooperation would be looked upon favorably.

The outcome differs from the Coatman claims because there is no evidence to show that Dunlap and the Commonwealth had reached an agreed-upon sentence that the trial court was obligated to impose. Thus, the circumstances are not the same as in the Coatman situation. Furthermore, the transcript shows that Dunlap's attorney expressed that the Commonwealth made no offer until the case was complete. We conclude that Appellant's allegations are merely speculative in nature. *See Simpson*, 66 A.3d at 266; *Champney*, 832 A.2d at 412. We therefore find that Appellant has failed to show his claim of ineffective assistance of appellate counsel is of arguable merit, and affirm the PCRA court's dismissal of this claim on that alternative basis. *Commonwealth v. Williams*, 977 A.2d 1174, 1177 (Pa.

Super. 2009) ("It is well-settled ... that we may affirm the PCRA court's decision on any basis.") (citation omitted).

## III.

### Request for discovery

Appellant's third and final claim argues that the PCRA court erred by denying his requests for discovery. Appellant submitted discovery requests within his *pro se* PCRA petitions and by a separate motion. Appellant summarized his requests as follows: "[Appellant] submits that although the discovery request in *pro se* amended PCRA petition is worded in a prolonged manner [Appellant] seeks any evidence in the Commonwealth's possession or control showing or tending to show that Lindsay Coatman and Joshua Dunlap cooperated/testified pursuant to undisclosed understandings." Motion for Discovery, 6/3/24, ¶ 14. Appellant requested these specific items:

> a   The following three sealed motions/orders that were filed in Com. V. Lindsay Coatman, CP-74-Cr-97 4-2009:
>
> 1) Waiver of Court Arraignment, filed on 6-11-2009; 2) Order Granting Motion for Continuance and Waiver of Pa.R.Crim.P. 600/1013, filed on 7-23-2009; (3) Order Granting Motion for Continuance and Waiver of Pa.R.Crim.P. 600/1013, filed on 10-91-2009.
>
> b. Any document, writing, memorandum or note in the Commonwealth's possession or control showing or tending to show the existence of understandings between the Cornnonwealth and the witnesses, Lindsay Coatman and Joshua Dunlap.
>
> c. Any document, writing, memorandum or note contained in the files maintained by counsel for witnesses, Lindsay Coatman and Joshua Dunlap, showing or tending to show the existence of understandings between the Commonwealth and the witnesses.

- 33 -

*Id.* ¶ 15 (footnote omitted).

The PCRA court partially granted his motion to the extent those materials "are a matter of public record" and supplied those documents to Appellant as a courtesy. **See** PCO at 3. The court denied all other requests, and supported its ruling in its opinion:

> ...Petitioner has failed to demonstrate the exceptional circumstances necessary to support a discovery motion in the PCRA context. Petitioner's remaining discovery requests are broad pleas for any documents held by the Commonwealth or the attorneys for Mr. Coatman or Mr. Dunlap that tend to show "the existence of understandings" between the Commonwealth and those witnesses. Petitioner has not plead any facts that tend to suggest that exculpatory evidence would be uncovered if his request was granted. To the contrary, Petitioner has repeatedly contended throughout this litigation that there was a *quid pro quo* between the Commonwealth and those witnesses--a contention which the Superior Court considered with respect to one of the witnesses and determined to be "purely speculative." **See** [***Litvinov***]. Accordingly, Petitioner having failed to put forth facts sufficient to constitute exceptional circumstances, Petitioner's other discovery requests are DENIED.

PCO at 3-4.

"We review a PCRA court's denial of an appellant's request for discovery for abuse of discretion." **Commonwealth v. Roney**, 79 A.3d 595, 603 (Pa. 2013). "Regarding the 'abuse of discretion' standard of review, this Court has explained that the term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the [trial] judge." **Commonwealth v. DiStefano**, 265 A.3d 290, 297 (Pa. 2021).

We conclude that the PCRA court abused its discretion because its ruling was based, in part, on a conclusion that the **Litvinov** panel foreclosed further proceedings on any underlying **Brady** and/or **Napue** claims.  As explained *supra*, we do not agree with that conclusion, and to the extent **Litvinov** is binding on that issue we have applied an exception to that doctrine.

Thus, the PCRA court abused its discretion.  We therefore remand this matter to the PCRA court and direct the PCRA court to reconsider Appellant's request in light of our decision.

Order affirmed in part and reversed in part.  Remanded for further proceedings consistent with this memorandum.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/14/2026